UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ERNEST T. MORALES, *pro se*,                            :
                                                        :
                        Plaintiff,                      :
                                                        :
          -against-                                     :          **MEMORANDUM AND ORDER**
                                                        :              12-CV-2350
BRIAN L. GOLDBECK, et al.,                              :
                                                        :
                        Defendants.                     :
-------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

     *Pro se*[1] Plaintiff Ernest T. Morales, a United States citizen, brings this action alleging the

process by which the United States consulate in Guangzhou, China denied his fiancée a visa to

enter the United States was unlawful.  Plaintiff names as Defendants: Brian L. Goldbeck, United

States Consulate General of Guangzhou, China; Hillary Clinton, United States Secretary of State;

Janet Napolitano, United States Secretary of Department of Homeland Security; and Alejandro

Mayorkas, United States Department of Homeland Security, Director of United States

Citizenship and Immigrant Services (collectively, "Defendants").  Plaintiff brings the following

causes of action: (1) request for mandamus for constitutional denial of due process; (2)

conspiracy to deprive Plaintiff of his First Amendment rights and equal protection of the laws

under 42 U.S.C. §1985; (3) § 1983 action for discrimination; and (4) failure to train or supervise

consulate employees.  Defendants move to dismiss the complaint for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the

---

[1] Plaintiff filed the original Complaint *pro se* on May 11, 2012.  (Compl., Doc. Entry No. 1.)  Counsel Jose A. Munoz filed an amended Complaint on behalf of Plaintiff on May 16, 2012 and a Notice of Appearance on May 18, 2012.  (Doc. Entry Nos. 5, 6.)  On March 1, 2013, the Court granted Mr. Munoz's Motion to Withdraw as Attorney and Plaintiff is, again, proceeding *pro se*.  As all Plaintiff's submissions under consideration in this Opinion were submitted by Plaintiff's counsel, the Court need not interpret Petitioner's submissions "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").  However, the Court notes that even if it had liberally interpreted Plaintiff's submissions, the result would be the same.

alternative, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the reasons set forth below, Defendants' motion to dismiss is granted for lack of subject matter jurisdiction.

## BACKGROUND

Except as otherwise indicated, the following facts were taken from the Amended Complaint. (*See* Amended Complaint ("Am. Compl."), Doc. Entry No. 5.)  On August 1, 2011, Plaintiff submitted an I-129F Petition for Alien Fiancée on behalf of his fiancée, Mei Chang ("Chang"), with the United States Citizenship and Immigration Services ("USCIS").  (Am. Compl. at 6.)[2] On February 3, 2011 the USCIS approved the petition.  (*Id.*)  The U.S. Consulate office in Guangzhou then issued Plaintiff instructions by e-mail and postal mail as to the next steps to take after the I-129F Petition approval.  (Am. Compl., Exs. G, K.)

In March 2012, the U.S. Consulate office in Guangzhou notified Chang that she was scheduled for a visa interview with its Immigrant Visa section on April 23, 2012.  (*Id.* at 8, Ex. H.)  Plaintiff flew to Guangzhou for the interview.  (*Id.* at 9.)  On the day of the interview, Chang brought documentation as instructed and Chang and her minor daughter, Chen Yu-Dum, were interviewed by consular officers.  (*Id.*)  During Chang's interview, Plaintiff was not allowed to speak, be present in the interview room, or provide additional evidence.  (*Id.*)  Consulate officers asked Chang whether she and her daughter spoke Spanish, but did not ask to see the documents Chang had with her as evidence of a bona fide relationship with Plaintiff.  (*Id.*)  At the end of the interview, Defendants gave Chang a standard denial letter, stating that she did not fulfill the requirements for the visa pursuant to § 221(g) of the Immigration and Nationality Act ("INA").  (*Id.* at 9-10, Ex. L.)  The letter indicated that Chang failed to show through testimony and documents that she had a "bona fide relationship" with Plaintiff.  (*Id.* at 10, Ex, L.)

---

[2] Citations are to the page numbers of the Amended Complaint.

After the interview, Plaintiff sent several emails to the U.S. Consulate in Guangzhou requesting a re-consideration of the visa denial.  (*Id.* at Ex. G.)  In an email dated April 25, 2012, the U.S. Consulate in Guangzhou replied, stating that the case was being returned to USCIS for revocation and any further inquiries should be made to USCIS.  (*Id.*)

Plaintiff filed the instant action on May 11, 2012 and an Amended Complaint on May 16, 2012.  Plaintiff's first claim alleges that Defendants failed to "act properly in accordance with the INA Act and regulations" by reviewing Chang's visa in an arbitrary and capricious manner and denied Chang's application in bad faith.  (*Id.* at 11.)  Plaintiff's second claim alleges Defendants conspired to deprive Plaintiff of his First Amendment and Equal Protection Rights under 42 U.S.C. § 1985, by not allowing him to participate in Chang's visa interview in Guangzhou and because other U.S. consulates conduct interviews with petitioners of K-1 visas.  (*Id.* at 13-14.)  Plaintiff's third claim, under 42 U.S.C. § 1983, alleges Defendants discriminate against visa petitioners with Hispanic names.  (*Id.* at 14.)  Lastly, Plaintiff alleges Defendant Goldbeck, the U.S. Consulate General of Guangzhou, China, failed to train or supervise the Consulate employees.  (*Id.* at 15.)

Plaintiff requests this Court declare the Defendants' actions unlawful and issue a preliminary and permanent injunction compelling Defendants to let Plaintiff appear with Chang in a new face-to-face interview for a fiancée visa.  (*Id.* at 16-17.)  Plaintiff requests that Defendants be enjoined from "continuing [their] policy and practice" of visa denial "without reviewing evidence they requested in their instructional package" and of "discriminating against petitioners due to their race and nationality."  (*Id.* at 17.)  Plaintiff seeks an award of disbursements, costs, immigration filing fees, and attorney's fees.  (*Id.*)  In the alternative,

Plaintiff requests the case be remanded before a different consulate office in China, "that are unbiased and willing to properly review all documentation." (*Id.*)

## DISCUSSION

A.     Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(1), the court accepts as true all factual allegations in the complaint, but should not draw inferences favorable to the party asserting jurisdiction. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F. 3d 107, 110 (2d Cir. 2004) (citation omitted).   "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000).   "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F. 3d 635, 638 (2d Cir. 2005).   In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings. *Makarova*, 201 F. 3d at 113.   Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F. 2d 674, 678 (2d Cir. 1990)).

B.     The Doctrine of Consular Non-Reviewability

Defendants argue that review of the Complaint is barred by the doctrine of consular non-reviewability.   (Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def. Mem.") at 3-6, Doc. Entry No. 9.)   Consular non-reviewability refers to the "long-standing judicial practice of refusing to review a consular official's decision to issue or withhold a visa." *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 417 (S.D.N.Y. 2006) (citing *Saavedra Bruno v.*

4

*Albright*, 197 F. 3d 1153, 1159 (D.C. Cir. 1999)).  "It has been applied by courts to preclude lawsuits by aliens – or their U.S. citizen sponsors – challenging a consular official's denial of a visa."  *Id.* (citing *Saavedra Bruno*, 197 F. 3d at 1155; *Hsieh v. Kiley*, 569 F. 2d 1179, 1181 (2d Cir. 1978)).  The doctrine is well established and beyond dispute.  *See Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) ("The power of congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications." (quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547 (1895)).

Congress has vested the United States consulate officers with the exclusive power to issue or deny visas.  8 U.S.C. § 1101(a)(9), (16); 8 U.S.C. §1201(a); *see also* 8 U.S.C. § 1104(a)(1) ("The Secretary of State shall be charged with the administration and the enforcement of . . .  immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States, *except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas*." (emphasis added)).  As such, district courts have no jurisdiction to review a consular official's decision to deny a visa to a foreign national.  *Hsieh*, 569 F. 2d at 1181 ("It is settled that the judiciary will not interfere with the visa-issuing process.") (collecting cases); *Rivera de Gomez v. Kissinger*, 534 F. 2d 518, 519 (2d Cir. 1976) (affirming the district court's holding that it "lacks jurisdiction to review the acts of American consular officials abroad in determining whether or not to issue a visa").

"The reach of the consular non-reviewability doctrine is broad."  *Yu Chu Hom v. Goldbeck*, 2010 WL 2265054, at *2 (E.D.N.Y. May 28, 2010).  The only instances where courts

5

have reviewed consular visa decisions are those that implicate the First Amendment rights of an American citizen or legal resident. *See Am. Acad. of Religion*, 463 F. Supp. 2d at 417 ("[T]he doctrine [of consular non-reviewability] does not apply in cases brought by U.S. citizens raising constitutional, rather than statutory claims."); *Mandel*, 408 U.S. at 764 (finding the alien visa applicant had no constitutional right of entry to this country, but rather, "[t]he rights asserted here . . . are [the First Amendment rights] of American academics who have invited Mandel to participate with them in colloquia debates, and discussion in the United States").

Plaintiff asserts a litany of statutory bases[3] for this Court to exercise jurisdiction over the instant case. (*See* Am. Compl. at 2.) None of these statutes allow the Court to review the consulate's decision to deny Chang's visa. *See Yu Chu Hom*, 2010 WL 2265054 ("Courts have repeatedly found that the [Administrative Procedure Act ("APA")] does not provide an end-run around the consular non-reviewability doctrine."); *Hsieh*, 569 F. 2d at 1181-82 (finding no subject-matter jurisdiction under either the Declaratory Judgment Act or the APA); *Rivera de Gomez*, 534 F. 2d at 519 (rejecting plaintiff's contention that Section 279 of the INA provides federal courts jurisdiction to interfere with the visa-issuing process); *see also Maldonado-Coronel v. McElroy*, 943 F. Supp. 376, 381 (S.D.N.Y. 1996) (finding no "obvious foundation upon which [to] exercise jurisdiction" where the plaintiff had alleged jurisdiction was provided by the APA, the Mandamus statute, the Declaratory Judgment Act, and Section 279 of the INA, among other statutes).

Morales, an American citizen, further argues this Court has jurisdiction over this action, because the consular non-reviewability doctrine is inapplicable where a U.S. citizen raises constitutional claims. (*Id*. at 2-3.) However, Plaintiff failed to set forth a viable constitutional

---

[3] Plaintiff advances the following bases for jurisdiction: 8 U.S.C. § 1154(a)(1)(A)(i); INA § 204(a)(1)(A); federal question jurisdiction, 28 U.S.C. § 1331; mandamus jurisdiction, 28 U.S.C. § 1361; 28 U.S.C. § 2201; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. (*See* Am. Compl. at 2.)

claim that would be exempt from the consular non-reviewability doctrine.   Therefore, the consular non-reviewability doctrine applies and this Court lacks jurisdiction to consider Plaintiff's claims. *Mandel*, 408 U.S. at 766 (1972).

>    1.    *Plaintiff's Due Process Claim*

Plaintiff asserts a Fifth Amendment due process violation alleging: (a) the consulate officer denied Change's fiancée a visa without making a determination on the merits; and (b) the consulate officer failed to abide by the INA Act and "regulations."   (Am. Compl. 11-13.)   At the outset, denial of the visa application of an alien spouse does not violate the constitutional rights of his or her U.S. citizen spouse. *Burrafato v. U.S. Dep't of State*, 523 F. 3d 554, 555 (2d Cir. 1975) (citing *Noel v. Chapman*, 508 F. 2d 1023, 1028 (2d Cir. 1975)).

Second, the Court does not have jurisdiction over constitutional due process claims based on the failure of a consulate to follow its own regulations.   Under the consulate non-reviewability doctrine, "courts do not 'have jurisdiction to review a consular official's decision, even if its foundation was erroneous, arbitrary, or <u>contrary to agency regulations</u>.'"   *Aquino v. Immigration and Customs Enforcement*, 2009 WL 1406625, at *2 (E.D.N.Y. May 18, 2009) (quoting *Ngassam v. Chertoff*, 590 F. Supp. 2d 461, 467 (S.D.N.Y. 2008) (emphasis in original); *see also Burrafato*, 523 F. 3d at 556 (finding district court had no jurisdiction over claims where plaintiff alleged the Department of State did not comply with its own regulations in denying her spouse's visa application).   Courts have consistently rejected due process claims similar to the one at issue here.   *Aquino*, 2009 WL 1406625, at *2 (collecting cases) ("Just as in those cases, [Plaintiff] seeks to overturn the consular decision denying . . . a visa based on an alleged failure by the consulate to follow its own regulations.   And, just as in those cases, this Court does not have jurisdiction to grant that relief."); *see also Yu Chu Hom*, 2010 WL 2265054, at *3 (granting

motion to dismiss where U.S. citizen claimed due process violation for failure of U.S. consulate in Guangzhou to investigate whether visa beneficiary knowingly and voluntarily engaged in any misrepresentation or fraud before denying visa for fraud).

        2.      *Plaintiff's First Amendment Claim*

Plaintiff's First Amendment claim does not provide a valid exception to the consular non-reviewability doctrine.  Plaintiff asserts his First Amendment rights were violated because he was not permitted to "participate in a face to face interview with consulate officers."  (Am. Compl. 13.)  The Second Circuit granted an exception to the consular non-reviewability doctrine and limited judicial review where a U.S. citizen plaintiff "asserts a First Amendment claim to have a visa applicant present views in this country."  *Am. Acad. of Religion*, 573 F. 3d at 125 (citing *Mandel*, 408 U.S. at 767).  "It is the purpose of the First Amendment . . . [for the] public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial."  *Mandel*, 408 U.S. at 763 (quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 390 (1969)).

In *American Academy*, United States academic organizations alleged that the denial of a visa to an Islamic scholar, who they had invited for a University teaching position, violated their First Amendment rights to have the visa recipient share his views with them and with the United States public.  *Am. Acad. of Religion*, 573 F. 3d at 122-24; *see also Mandel*, 408 U.S. at 757-761 (allowing limited judicial review over consular decision when Belgian journalists, invited by American academics to participate in academic debates and discussions, were denied entry into the United States).

The facts and issues of the instant case do not resemble those of *American Academy* or *Mandel*.  The courts in *American Academy* and *Mandel* sought to protect the First Amendment

rights of American plaintiffs and the U.S. public to "hear, speak, and debate with" the visa applicant.  *Mandel*, 408 U.S. at 763; *Am. Acad. of Religion*, 463 F. Supp. 2d at 414-15. Conversely, Plaintiff brings this First Amendment claim so Plaintiff can speak to consular officers in China regarding his relationship with his fiancée, Chang, not because Chang was denied the opportunity to share her views with the U.S. public.  Such a claim does not impact the First Amendment rights of the U.S. public to hear and debate a visa holder's views, nor does it pertain to the kind of First Amendment expression that concerned the courts in *American Academy* and *Mandel*.  *See Am. Acad. of Religion*, 463 F. Supp. 2d at 414 ("[T]he First Amendment rights of American citizens are implicated when the Government excludes an alien from the United States on the basis of his political views, even though the non-resident alien has no constitutionally or statutorily protected right to enter the United States to speak.") Accordingly, the limited exception to the consular non-reliability doctrine is not available to Plaintiff and the Court does not have jurisdiction over his First Amendment claim.

### 3.    *Plaintiff's §§ 1983 and 1985 Claims*

Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 do not provide jurisdiction for this Court to review the decision of the U.S. consulate in Guangzhou.  (Am. Compl. 13-14.)  Section 1983 does not apply to the federal government or its officers, and "deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory.' It does not reach . . .  actions of the Federal Government."  *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973) (quoting 42 U.S.C. § 1983).

Furthermore, Plaintiff lacks a viable § 1985 equal protection claim, as he does not establish a *prima facie* case under the statute.  Section 1985 requires that a plaintiff establish: 1) the existence of a conspiracy between Defendants; 2) Defendants' intent to deprive plaintiff of

equal protection of the laws or the equal privileges and immunities under the law; 3) commission of an act in furtherance of the conspiracy; and 4) a deprivation of plaintiff's rights. *Iqbal v. Hasty*, 490 F. 3d 143, 176 (2d Cir. 2007); *see also X-Men Sec., Inc. v. Pataki*, 196 F. 3d 56, 71 (2d Cir. 1999) (conclusory allegations of defendants' alleged participation in a conspiracy are inadequate to make a claim under § 1985).  Plaintiff's claims amount to a grievance with the procedure of the consular office in denying Chang's visa.  Consequently, Plaintiff does not have a claim under either 42 U.S.C. §§ 1983 or 1985.

The doctrine of consular non-reviewability applies and the U.S. consulate's decision to deny Plaintiff's fiancée a visa is not subject to judicial review.  "Whether the consul has acted reasonably or unreasonably is not for a [federal court] to determine." *Landon v. Phelps*, 22 F. 2d 288, 290 (2d Cir. 1927).  As the Court lacks subject matter jurisdiction over any of Plaintiff's claims, this Complaint must be dismissed.

## CONCLUSION

For the reasons set above, the Court lacks jurisdiction to consider Plaintiff's claims and Defendant's motion to dismiss the complaint is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

SO ORDERED

Dates: Brooklyn, New York
         March 11, 2013

_____/s/_____
         DORA L. IRIZARRY
         United States District Judge